# In the United States Court of Federal Claims

No. 09-104C
(Filed June 15, 2009)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * | * Pre-award bid protest; 28 U.S.C. |
| | * § 1491(b)(1) (2006); RCFC |
| **TOTOLO/KING, a Joint Venture,** | * 52.1, judgment on the adminis- |
| | * trative record; Department of |
| Plaintiff, | * Veteran Affairs Veteran's First |
| | * Contracting Program, 38 U.S.C. |
| v. | * §§ 8127, 8128 (2006); reason- |
| | * ableness of agency decision to |
| **THE UNITED STATES,** | * issue solicitation as full and |
| | * open competition/unrestricted, |
| Defendant. | * 48 C.F.R. (FAR) §§ 19.202-2, |
| | * 19.502-2 (2006); supplemen- |
| * * * * * * * * * * * * * * * * * * * * * * | * tation of administrative record. |

James E. Krause, Jacksonville, FL, for plaintiff.

John S. Groat, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Kenneth MacKenzie, Department of Veterans Affairs, of counsel.

### MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This pre-award bid protest is before the court after argument on the parties' cross-motions for judgment on the administrative record. Totolo/King Joint Venture ("plaintiff"), a Service Disabled Veteran Owned Small Business general contractor, seeks permanently to enjoin the Department of Veterans Affairs (the "DVA") from soliciting a contract for the construction of a new surgical-suite addition and the partial renovation of surgical support area at the Harry S. Truman Veterans Memorial Hospital in Columbia, Missouri (the "Project"), as an open and unrestricted competition. The issue presented is whether the DVA conducted a meaningful winnowing process to determine the availability of eligible, capable veteran-owned small-business contractors.

### FACTS

The Administrative Record ("AR") is the source of the following facts, unless otherwise noted. The court also draws on several agency documents that the parties provided

with their briefs, inexplicably not included in the administrative record. Plaintiff is a registered Service Disabled Veteran Owned Small Business ("SDVOSB") general contractor. 1/ See Complaint filed Feb. 19, 2009, ¶ 12. Plaintiff is registered under North American Industry Classification System ("NAICS") Code 236220, which meets the size standards for Solicitation Number: VA-101-08-RP-0257 (the "Solicitation"), and is a bondable Small Business contractor.

On September 20, 2008, the DVA posted a Sources Sought Notice (the "SSN") seeking to identify "potential small bondable and experienced businesses" that were interested in the proposed Solicitation. AR at 3. The SSN specified that the estimated cost of the project would be between $20 and $50 million. The SSN designated NAICS code 236220 as the applicable code for the Solicitation, which established a small-business size standard of $ 33.5 million. The deadline to submit a response was October 3, 2008. The SSN specified that "Interested Bondable small businesses" responding to the SSN should include the following information: general background and contact information for the business; the "[b]usiness size determination and qualifying small business status"; the business's bonding capacity; information regarding construction experience on similar

---

1/ In an effort to "maintain and strengthen the overall economy of the Nation," the Small Business Act, 15 U.S.C. §§ 631-657 (2006) (the "SBA"), assists eligible small business concerns by "insur[ing] that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government" are competed by small businesses. 15 U.S.C. § 631(a). Under section 8(a) a small business concern is one "owned and controlled by socially and economically disadvantaged individuals[,]" and which has participated in the small business and capital ownership development program. 15 U.S.C. § 637(a)(1)(C).

The Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, §§ 502-03 (codified at 38 U.S.C. §§ 8127-28 (2006) ("Veterans First " or "Veterans First Program"), was enacted to achieve a similar goal, but more specifically to increase contracting opportunities for service-disabled veteran and veteran-owned qualified small businesses. See 38 U.S.C. § 8127(a). Similar to provisions applicable to the SBA, "a contracting officer of the Department [of Veteran Affairs] shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers . . . ." Id. § 8127(d); cf. FAR 19.502-2(b) (stating that "[t]he contracting officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that [] offers will be obtained from at least two responsible small business concerns . . . .").

projects in the same size and scope; and the "Sources Sought Announcement number and specific project location." AR at 4.

On October 6, 2008, plaintiff responded to the SSN. 2/ Then, by memorandum dated October 17, 2008, Contracting Officer Frank A. Clemons issued a "Justification for Procurement" to the DVA Office of Small and Disadvantaged Business Utilization (the "OSDBU") recommending that "construction services for a new Surgical Suite addition to the existing hospital and renovation for surgical support functions at the Harry S. Truman Veterans Memorial Hospital, in Columbia, Missouri be solicited as full and open competition/unrestricted." Pl.'s Br. filed Mar. 10, 2009, Ex. C. The stated purpose for the SSN was to "solicit responses from small bondable businesses capable of performing the work" for the Project. Id. Mr. Clemons only provided a cursory review of the basis for his recommendation, stating that three small companies responded to the SSN and that a search of VetBiz.gov (a federally controlled database that houses information about service-disabled or veteran small businesses) did not identify any small businesses demonstrating the requisite bonding capability or experience. The OSDBU approved Mr. Clemons's recommendation on October 30, 2008.

On December 17, 2008, the DVA issued a presolicitation (a term of art for presolicitation notice) announcing that the DVA planned to procure construction services through an unrestricted bidding process opening up competition to small and large business offerors. The presolicitation stipulated that solicitation documents would be available around December 31, 2008, and provided an estimated proposal due date of February 5, 2009.

On February 19, 2009, plaintiff filed its complaint in the United States Court of Federal Claims. In pleading two counts for relief, plaintiff alleged that the DVA failed to follow applicable laws and regulations, 38 U.S.C. §§ 8127, 8128 (2006); 48 C.F.R. (FAR) § 19.202-2 (2006): (1) by unreasonably conducting market research, *vis-a-vis* the SSN, for the identification of potential small bondable and experienced businesses interested in the proposed Solicitation; and (2) by arbitrarily and in violation of applicable statutes and procurement regulations failing to follow the practice of stipulating bond requirements when conducting market research, thereby discouraging small businesses from responding to its SSN. 3/

---

2/  Although it appears from the record that plaintiff untimely responded to the SSN, defendant has not raised this issue in any filings or otherwise before the court.

3/  Plaintiff's complaint has been deemed amended based on the filings made on April 8, 2009. See Order entered Apr. 8, 2009, at 2; see also RCFC 15(b)(2). In its initial filings,

On March 10, 2009, plaintiff moved for a preliminary injunction staying issuance of the Solicitation. Shortly thereafter, on March 17, 2009, the court granted defendant's unopposed motion of March 16, 2009, to remand the matter to the DVA for reconsideration of its decision to conduct the Solicitation "as full and open competition/unrestricted" and for any corrective action considered appropriate by the DVA. Def.'s Mot. filed Mar. 16, 2009, at 1-2.

On March 30, 2009, defendant filed notice to the court of the DVA's remand decision comprising of a second "Justification for Procurement" prepared by Mr. Clemons – again recommending that the Solicitation be conducted as full and open competition/unrestricted, AR at 5-6 – and the OSDBU's approval (Form 2268). AR at 8. Both documents are dated March 20, 2009. The memorandum stated that the reevaluation of the earlier decision was undertaken in respect to plaintiff's allegation that the procurement should be set aside for a SDVOSB under the Veterans First Program. Therefore, the remand justification should clarify "an ambiguity in the original justification memorandum" and correct any problems found in the original decision. Id. at 5. The memorandum contained Mr. Clemons's explanation of the basis for his determination that the Solicitation should not be conducted as a restricted set-aside procurement.

Mr. Clemons first elaborated on the results of and the steps taken in evaluating the responses to the SSN that was issued in Federal Business Opportunities (Fedbizzopps.gov) on September 20, 2008. He explained that the SSN targeted six small business categories, including SDVOSBs, as the "purpose of the Sources Sought was to solicit responses from small bondable businesses capable of performing the work" that is the subject of the Solicitation. AR at 5. Three small businesses responded to the SSN indicating interest in the Project: 1) plaintiff; 2) an "8(a) small business"; and 3) Alaska Native Corporation/8(a). Id. Mr. Clemons stated that he researched the qualifications of one of the responding 8(a) contractors, but concluded that this company lacked the bonding capability required for the Solicitation. "Thus, because [the Office of Construction and Facilities Management for the

---

3/ (Cont'd from page 3.)

plaintiff alleged that the DVA's use of a $20-50 million range rendered the SSN defective because the range was in "excess of the reasonable ability of Small Business Contractors to both build and bond." See Compl. ¶¶ 38, 41. Following defendant's response establishing the legality of the DVA's use of a $20-50 million range in its SSN, pursuant to FAR 836.204, plaintiff amended its protest "admitting the legality of the DVA's use of the required $20-50 million range." Pl.'s Br. filed Apr. 6, 2009, at 1.

DVA] wanted to compete this procurement, [Mr. Clemons] decided to forgo an 8(a) set-aside." AR at 6.

Next, Mr. Clemons searched VetBiz.gov by NAICS code 236220. He stated that the search results identified many service-disabled veteran and veteran-owned small businesses; however, he concluded that these businesses were not qualified because they either lacked bonding capability or experience working on projects of similar size. Mr. Clemons also searched the VetBiz registry for small businesses under NAICS code 236220. His search yielded a list of 1,113 general and non-general contractors. Mr. Clemons investigated the first ten companies and also performed a random search, among the 1,113 listed contractors, for qualified small businesses. He reported that both of these searches were unsuccessful in identifying qualified small businesses, noting that "only one SDVOSB had responded to the Sources Sought ad. Consequently, [he] did not expect that two or more responsible SDVOSB firms would submit offers." AR at 6. Mr. Clemons offered the aforementioned processes and findings as justification for concluding that the construction and renovation services should be solicited as full and open competition/unrestricted. Id.

Plaintiff, not satisfied with the findings of the DVA, elected to continue to pursue its motion to enjoin preliminarily issuance of the Solicitation. On April 3, 2009, defendant filed its response to plaintiff's motion for a preliminary injunction and moved for judgment on the administrative record. After oral argument held on April 7, 2009, this court denied plaintiff's motion for a preliminary injunction, ruling that plaintiff failed to demonstrate its likelihood of success on the merits, i.e., that the DVA failed to follow applicable laws and regulations in issuing the SSN. See Order entered Apr. 8, 2009, at 2.

On April 16, 2009, plaintiff cross-moved for judgment on the administrative record and moved for a permanent injunction. Plaintiff attacks on three major grounds the DVA's decision not to issue the Solicitation as a SDVOSB set-aside, but as full and open competition/unrestricted. First, plaintiff argues that the DVA issued a defective Solicitation by publishing an arbitrary SSN that did not reflect accurately the DVA's "intent and interests, and was arbitrary and inconsistent with 11 other similar DVA Sources Sought Notices." Pl.'s Br. filed Apr. 16, 2009, at 2, Ex. B-1 - B-11. Plaintiff contends that the purpose of the SSN is to give "the contracting community [] notice that the DVA is considering setting aside a construction project for small business only participation, and to attract responsible SDVOSB general (prime) contractors." Id. at 2.

Plaintiff next argues that the DVA violated applicable statutes and procurement regulations by using the incorrect standard when searching for, and determining whether to set the Solicitation aside for, SDVOSBs. The DVA only must have a "reasonable expectation" that at least two responsible small businesses will submit offers. Pl.'s Br. filed

5

Apr. 16, 2009, at 4 (citing FAR 19.502-2(b)).  Finally, plaintiff argues, in the alternative, that, if the court determines that the DVA used the correct standard, the DVA failed to perform sufficient market research required by the agency's "policies, rules and regulations to make a rational Small Business Set Aside Determination."  Id. at 2.

During oral argument held on May 5, 2009, the court questioned defendant why the contracting officer researched only one small business before determining not to set the procurement aside pursuant to FAR 19.502-2.  See AR at 5-6 (Mr. Clemons's Justification for Procurement stating that he "checked the qualifications of one of 8(a) firms that responded and determined that it did not have the bonding capability.  Thus, because we wanted to compete this procurement, [the contracting officer] decided to forgo an 8(a) set-aside.")  Defendant explained that this procurement falls under the provisions of the Small Business Competitiveness Demonstration Program Act (the "Demonstration Program"), Pub. L. No. 106-554, Title VIII, 114 Stat. 2763, 2763A-706, codified as amended at 15 U.S.C. § 644 (2006), as implemented by FAR 19.1001-19.1008, thus exempting the DVA from following the procedures dictated by FAR 19.502-2(b).  See Def.'s Br. filed May 8, 2009, at 3.  Defendant conceded that it had not previously raised FAR subpart 19.10 as authority for this procurement, although the DVA "revised the solicitation to reflect the authority for the procurement."  Id. at 3 n.2.

Plaintiff agrees, at this juncture, with defendant that "FAR 19.502[-2] is not the issue."  Pl.'s Br. filed May 14, 2009, at 2.  Plaintiff continues that FAR 19.1001 is "irrelevant" to this case based on "38 U.S.C. § 8127, FAR [] 19.14 and FAR [] 19.10."  Id. at 3.  Plaintiff emphasizes that the issue relates to the DVA's failure to provide contracts to SDVOSB, a specific subset of small businesses.  See Pl.'s Br. filed May 14, 2009, at 2.  Supplemental briefing was completed on May 14, 2009.

**DISCUSSION**

I.  Jurisdiction

The United States Court of Federal Claims derives jurisdiction over bid protests from the Tucker Act, 28 U.S.C. § 1491(b)(1), amended by the Administrative Disputes Resolution Act of 1996, Pub. L. No. 104-320, § 12(a), 110 Stat. 3870, 3874-75 (codified at 28 U.S.C. § 1491(b)) (the "ADRA").  Specifically, the Court of Federal Claims has jurisdiction over actions by an "interested party" objecting to (1) a solicitation by a federal agency for bids or proposals for a proposed contract; (2) a proposed award or the award of a contract; or (3) any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement.  28 U.S.C. § 1491(b)(1).  Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  The court may "award any relief that the court considers proper, including declaratory and injunctive relief."  28 U.S.C. § 1491(b)(2).

II. Standing

Every plaintiff must have standing to invoke the court's jurisdiction over a bid protest. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("[t]he party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]"). 28 U.S.C. § 1491(b)(1) provides, in pertinent part: "[T]he United States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals . . . ." The pivotal element of standing in a bid protest is whether a protester qualifies as an "interested party" under § 1491(b)(1). See Am. Fed'n of Gov't Emp. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("AFGE") (holding that "interested party" under Tucker Act is construed in accordance with Competition in Contracting Act, 31 U.S.C. § 3551(2) (2006)).

The United States Court of Appeals for the Federal Circuit defines "interested party" in § 1491(b)(1) as "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract [by the Government]." Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (internal quotation marks and emphasis omitted) (quoting AFGE, 258 F.3d at 1302). This statutory definition imposes a two-part burden to establish standing: (1) plaintiff must show that it is an actual or prospective bidder, and (2) plaintiff must show that it possesses a direct economic interest. Rex Serv. Corp., 448 F.3d at 1307.

Plaintiff has standing to pursue this action because it is a prospective bidder if the Solicitation were issued as a SDVOSB or small business set-aside, and because plaintiff's direct economic interest has been affected by the DVA's decision to conduct the Solicitation as full and open competition/unrestricted. See AR at 6. 4/

III. Motion for judgment on the administrative record

1. Standard of review

To obtain permanent injunctive relief, a protester must prove either that the agency acted arbitrarily or capriciously or that it prejudicially violated an applicable procurement

---

4/ Defendant does not challenge plaintiff's standing to bring this pre-award bid protest. See Def.'s Br. filed Apr. 3, 2008, at 1; see also Order entered Apr. 8, 2009 (denying plaintiff's motion for preliminary injunction and finding that plaintiff perfected its status as interested party pre-award).

7

regulation. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) ("Domenico Garufi") (discussing cases based on Scanwell Labs. Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970)).

The ADRA's standard of review for agency procurement decisions mirrors the standard of review set forth in the Administrative Procedure Act, 5 U.S.C. § 706 (2006) (the "APA"). See 28 U.S.C. § 1491(b)(4); Banknote Corp., 365 F.3d at 1350. The APA gives the court discretion to set aside only an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see PGBA LLC v. United States, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004) (clarifying that ADRA incorporates arbitrary and capricious standard of APA to review procurement decisions, but did not change court's discretion in granting remedy of injunctive relief); see also Domenico Garufi, 238 F.3d at 1332-33. However, establishing that an agency violated the APA standard of review does not entitle a protestor to relief; the error also must be prejudicial. 5/ Galen Med. Assoc. Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (clarifying that, in addition to significant error in procurement process, plaintiff must show error was prejudicial (citing Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996)).

Accordingly, the Federal Circuit applies a two-step analysis for bid protests: first, the court must determine whether the Government acted without a rational basis (whether the

---

5/ The Federal Circuit has held that "the question of prejudice goes directly to the question of standing . . . [and that] 'prejudice . . . is a necessary element of standing.'" Info. Tech. & App. Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (quoting Myers Investigative and Sec. Servs. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002)). Although the prejudice requirement for standing has been satisfied by a nominal showing that a protester "could compete for the contract," Myers, 275 F.3d at 1370, the prejudice requirement required for success on the merits consistently has been more stringent. See TipTop Constr., Inc. v. United States, 563 F.3d 1338 (Fed. Cir. 2009) (no prejudice when contracting officer gave alternative ground for decision that was upheld); Galen Med. Assoc. v. United States, 369 F.3d 1324, 1330-31 (Fed. Cir. 2004) (denying existence of prejudice when proposal did not have requisite facilities required by solicitation); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1563 (Fed. Cir. 1996) (prejudice not found when, despite pricing error, protestor's prices remained substantially higher). In essence, these are incongruent, although slightly overlapping, standards. See generally Textron, Inc. v. United States, 74 Fed. Cl. 277, 284-85 & n.3, 329-30 (2006) (summarizing Federal Circuit caselaw); cf. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (holding that both standards can be satisfied with same demonstration of "substantial chance" of receiving award but for alleged error).

8

action was arbitrary or capricious), see Domenico Garufi, 238 F.3d at 1332; or whether the Government acted contrary to law (whether government action constituted a prejudicial violation of an applicable procurement regulation). In either case a plaintiff bears the heavy burden of proving a lack of rational basis or a violation of the law. Id. at 1333. Second, if the government action lacked a rational basis, a factual inquiry must be conducted to determine whether the protester was prejudiced by the conduct. See Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).

Agency action is arbitrary or capricious when it does not have a rational basis for its decision. A rational basis requires "the contracting agency [to] provide[] a coherent and reasonable explanation of its exercise of discretion." Domenico Garufi, 238 F.3d at 1333 (internal quotations and citation omitted). The court's role in a bid protest, including ascertaining the existence of a rational basis, is not to substitute judgment for the agency; indeed, the agency generally is accorded wide discretion in evaluating bids. Grumman Data Sys. Corp. v. Widnall, 15 F.3d 1044, 1046 (Fed. Cir. 1994); see also Camp v. Pitts, 411 U.S. 138, 142-43 (1973) (stating that courts should review facts to determine if agency's decision is supported by rational basis).

   2. Burden of proof

The parties filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1. This rule provides a procedure allowing the court to expedite a trial by using a "paper record" to conduct fact finding. Bannum, 404 F.3d at 1356. Unlike a motion for summary judgment, a genuine dispute of material fact does not preclude a judgment on the administrative record. Id. The parties are restricted to the agency record and any supplementation consistent with RCFC 52.1. Findings of fact made by the court are consistent with those that would be made during trial. Id. at 1357.

Plaintiff must establish its entitlement to permanent injunctive relief by satisfying four criteria. The Federal Circuit requires a protestor to establish that "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." Centech Group, Inc. v. United States, 554 F.3d 1029, 1037 (2009). See generally eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

IV. Success on the merits

   1. The applicable regulations and their requirements

Plaintiff must prove that the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 28 U.S.C. § 1491(b)(4) (adopting

9

standard of 5 U.S.C. § 706(2)(A)).  Therefore, plaintiff has the burden of proving either that the DVA acted without a rational basis when it decided not to solicit a SDVOSB or small business set-aside, or plaintiff must show "a clear and prejudicial violation of applicable statutes or regulations."  Domenico Garufi, 238 F.3d at 1333 (internal quotations and citations omitted).  In addition, plaintiff must establish that the DVA's actions prejudiced it.  "[I]f the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protestor was prejudiced by that conduct."  Bannum, 404 F.3d at 1351.

Defendant's most recent argument, made in its post-argument brief, is that FAR 19.1001-19.1008 exempts the DVA from following the procedures dictated by FAR 19.502-2(b), Def.'s Br. filed May 8, 2009, at 3, while conceding that this procurement is subject to the provisions of 38 U.S.C. § 8127, id. at 3 n.3.  Defendant proposes that the Demonstration Program was enacted to "test the ability of small businesses to compete successfully in certain industry categories without competition being restricted by the use of the small business set-asides."  Def.'s Br. filed May 8, 2009, at 3; see also FAR 19.1003 (stating that purpose of program is to "[a]ssess the ability of small businesses to compete successfully in certain industry categories without competition being restricted by the use of small business set-asides.").

The Demonstration Program is limited to businesses competing for contracts meeting a specified dollar threshold, issued by a participating government agency, and within a designated industry group classified by NAICS code.  These initial requirements are met by the procurement at issue in this litigation:  1) the DVA procurement anticipates a contract value of over $20 million, FAR 19.1007; 2) the DVA is listed as a participating agency, FAR 19.1004; and 3) plaintiff is a contractor in a designated industry group (NAICS code 236220), FAR 19.1005.  This subpart of the FAR also provides that "[a]cquisitions in the designated industry groups must continue to be considered for placement under . . . the Service-Disabled Veteran-Owned Small Business Procurement Program (see Subpart 19.14)."  FAR 19.1007.  Plaintiff emphasizes that this is the first time that the DVA has raised FAR 19.10 as authority to avoid conducting the procurement as a small business set-aside.  Plaintiff urges that the Demonstration Program is not applicable to this case; rather, this acquisition should be evaluated under the authorities promulgated by 38 U.S.C. § 8127, FAR 19.14 and FAR 19.10.

The Veterans First Program was enacted to achieve goals similar to those under the Small Business Act, but with a focus on increasing contracting opportunities by the DVA for service-disabled veteran and veteran-owned qualified small businesses.  38 U.S.C. § 8127 provides:

10

>   (a) Contracting goals.--(1) In order to increase contracting opportunities for small business concerns owned and controlled by veterans and small business concerns owned and controlled by veterans with service-connected disabilities, the Secretary shall--
>
>   (A) establish a goal for each fiscal year for participation in Department contracts (including subcontracts) by small business concerns owned and controlled by veterans who are not veterans with service-connected disabilities in accordance with paragraph (2); and
>
>   (B) establish a goal for each fiscal year for participation in Department contracts (including subcontracts) by small business concerns owned and controlled by veterans with service-connected disabilities in accordance with paragraph (3).

See also 38 U.S.C. § 101(1) (stating that "the terms 'Secretary' and 'Department' mean the Secretary of Veterans Affairs and the Department of Veterans Affairs, respectively.").

Section 8127(d) of Veterans First provides, in pertinent part:

[A] contracting officer of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

The Veterans Benefit Act of 2003 § 308, 15 U.S.C. § 657f (2006), created the procurement program for SDVOSBs with the purpose of providing contracting assistance to SDVOSBs. FAR 19.1401(a), (b). At any rate, FAR subpart 19.14 notably is distinguishable as it is applicable to "all Federal agencies that employ one or more contracting officers" and is not limited to contracts issued by the DVA. Compare FAR 19.1402 with 38 U.S.C. § 8127(a)(A), (B). The provisions of FAR 19.1405 to set aside acquisitions for SDVOSBs do not place a mandatory requirement on the contracting officer to restrict competition: "The contracting officer may set-aside acquisitions . . . for competition restricted to service-disabled veteran-owned small business concerns," FAR 19.1405(a) (emphasis added), when the contracting officer has a reasonable expectation that the agency will receive offers from two or more SDVOSBs, and award will be made at fair market prices, id. § (b).

In comparing the two statutes, 38 U.S.C. § 8127 and 15 U.S.C. §657f , the former imposes a mandatory obligation to restrict competition, while the latter does not. As both parties agree, and as supported by statutory interpretation, 38 U.S.C. § 8127 is more on point

in this procurement. The Project is issued by the DVA and is for the construction and renovation of the Harry S. Truman Veterans Memorial Hospital.

Insofar as the DVA is permitted to cancel the Solicitation, plaintiff has not explained why the DVA "has not . . . met the requirements of the program . . . , [and] has not properly noticed and solicited this procurement pursuant to requirements of the" Demonstration Program. Pl.'s Br. filed May 14, 2009, at 4. Addressing plaintiff's principal complaint, the court concludes that a contracting officer still can give priority placement consideration to veteran-owned small businesses under FAR subpart 19.10 and still can encourage veteran-owned small businesses to participate in a solicitation. FAR subpart 19.10 does not preclude veteran businesses from participating or bidding; instead, it merely opens competition to an unrestricted rather than restricted basis. The general duties and requirements under each respective statute are not mutually exclusive. 6/

Plaintiff contends that the purpose of the SSN is to provide notice to the contracting community that the DVA is considering whether to set aside the Project for small businesses and to alert responsible SDVOSB general contractors of government contracting opportunities. Plaintiff cites to FAR 5.201 in support of its argument, which stipulates that "agencies must make notices of proposed contract actions available," as the "primary purposes of the notice are to improve small business access to acquisition information and enhance competition by identifying contracting and subcontracting opportunities." Pl.'s Br. filed Apr. 16, 2009, at 2-3 (citing FAR 5.201(a),(c)).

Although plaintiff has not cited a specific authority obligating the DVA to provide a bonding estimate in a SSN, plaintiff maintains that the DVA's failure to include a bond estimate in the SSN prevented prospective offerors from making "an informed business decision pursuant to FAR 5.207," thereby violating applicable procurement regulations. Pl.'s Br. filed Apr. 16, 2009, at 3 (citing FAR 5.207(c)) (stating that general description should be "a clear and concise description of the supplies or services that is not unnecessarily restrictive of competition and will allow a prospective offerors to make an informed business judgment")). Plaintiff proffers as evidence of the DVA's "arbitrary solicitation methods" eleven other SSNs in which the DVA included the bond estimate. Id. at 3, Ex. B-1 - B-11.

2. Supplementation of administrative record

Plaintiff's president asserts that the bond amount for a project is a "crucial factor" for a small business in making an informed business decision on whether to respond to the SSN. Aff. of William Totolo, Apr. 16, 2009, ¶ 7. Because the typical amount for a bond is 100%

---

6/ It should be noted that application of FAR subpart 19.10 does preclude the DVA from issuing the Solicitation under a restricted competition set-aside.

of the contract, plaintiff concludes that the "only reasonable assumption" was that a $50 million bond would be required for the Project. Pl.'s Br. filed Apr. 16, 2009, at 4. Plaintiff surmises that these actions evidence the DVA's failure to provide proper notice and illustrate the DVA's arbitrary implementation of this SSN, compared to the eleven other notices issued by the agency. In making the latter comparison, plaintiff charges that the DVA neglected its statutory obligation to conduct business with "integrity, fairness, and openness" and to treat bidders fairly. Pl.'s Br. filed Apr. 16, 2009, at 4 (citing FAR 1.102(b)(3) and FAR 1.102-2(c)(3)). "Arbitrarily changing the solicitation method of notifying small business[es] of the need to respond to potential set asides via different Source Sought Notices is unfair." Id.; see also Pl.'s Br. filed May 1, 2009, at 8.

Defendant asks the court not to consider Mr. Totolo's affidavit on the ground that plaintiff improperly is trying to supplement the administrative record. Defendant invokes Domenico Garufi, 238 F.3d at 1338, in arguing that "only when the Court cannot conduct meaningful judicial review from the administrative record is supplementation of the record appropriate." Def.'s Br. filed Apr. 24, 2009, at 6. Defendant's abbreviated reference to this case, without more, does not accurately replicate the parameters on supplementation set forth in Domenico Garufi, 238 F.3d at 1338.

The Federal Circuit in Domenico Garufi confronted the issue of identifying those "circumstances under which an administrative agency will be compelled to provide an explanation for its decision," when applicable procurement regulations do not call for one. Id. at 1337. The court noted that, under FAR 9.105-2(a), the contracting officer is not required to provide the basis behind a responsibility determination (as compared to a finding of non-responsibility). Id. at 1337-38. "However, under the APA even where an explanation or reason is not required, a reviewing court has power to require an explanation . . . if such an explanation is required for meaningful judicial review." Id. at 1338 (citing Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990); Camp, 411 U.S. at 142-143; Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)). The Federal Circuit discussed the circumstances in which compelling discovery of a contracting officer's reasoning might be appropriate, but did not mention a plaintiff's proffer of a sworn statement relating to facts in the administrative record. In the case at bar, plaintiff is not seeking to obtain a declaration from Mr. Clemons; rather, plaintiff is attempting to explain, though a sworn statement, why the DVA's failure to specify a bond estimate was unreasonable under the circumstances. See CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1353 (Fed. Cir. 2008).

Before oral argument held on May 5, 2009, and after the parties' cross-motions for judgment on the administrative record were briefed fully, the Federal Circuit issued its most recent decision on the issue of supplementing the agency record, Axiom Res. Mgmt, Inc. v.

13

United States, 564 F.3d 1374 (Fed. Cir. 2009). The Federal Circuit emphasized in <u>Axiom</u> that the "focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA." <u>Id.</u> at 1381. The court reversed an injunction preventing the Government from exercising its option to renew a contract, ruling that the trial court abused its discretion by failing to make the determination of the need for supplementation before allowing plaintiff to supplement the record. <u>Id.</u> at 1382.

On appeal defendant contended that the trial court erred by allowing the protestor to supplement the record with extra-record documents (legal pleadings before the General Accountability Office and declarations by Axiom employees and consultants) and then extensively relied on those documents to support its decision. <u>Id.</u> at 1378. The Federal Circuit decoupled this "meaningful review," <u>id.</u> at 1381, standard from the eight exceptions to the rule restricting review to the record submitted by the agency set forth in <u>Esch v. Yeutter</u>, 876 F.2d 976, 991 (D.C. Cir. 1989): "[I]nsofar as Esch departs from fundamental principles of administrative law as articulated by the Supreme Court in Pitts and *Florida Power & Light* [*Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)], it is not the law of this circuit." <u>Id.</u>

As certain of the <u>Esch</u> exceptions have guided the conduct of bid protests in the Court of Federal Claims since 1996, this court understands that the following are still viable and that the administrative record may be supplemented:

> (1) when the agency action is not adequately explained in the record before the court;
> (2) when the agency failed to consider factors which are relevant to its final decision;
> (3) when an agency considered evidence which it failed to include in the record;
>
> . . . .
>
> (8) in cases where relief is at issue, especially at the preliminary injunction stage.

<u>Esch</u>, 876 F.2d at 991. Each of the first three contemplates addition to the administrative record of material that the invitation for bids or solicitation required.

Regarding the last item, a bid protest brought in the Court of Federal Claims contemplates that the record before the court will include post-final-agency-action

evidentiary submissions. A court cannot evaluate a charge that the contracting officer failed to consider required submitted information without learning from the protestor what was omitted. A court cannot give due regard to the interests of national defense and national security without accepting a declaration or affidavit from a responsible official. 28 U.S.C. § 1491(b)(3). A court cannot examine agency actions that are assailed as a conflict of interest, bias, or other extra-legal activity without considering evidence that was not before the agency when the administrative decision was made. Nor can a court evaluate the parties' factual showings regarding the three equitable findings for injunctive relief without accepting post-final-agency-action evidentiary submissions. This court therefore does not interpret the new guidelines in Axiom to change the trial court's practice, other than to emphasize restraint and adherence to precedent. 7/

      3. Reasonableness of agency's efforts to encourage participation of small businesses

Put in the context of the Federal Circuit's precedent, plaintiff submits that pursuant to FAR 19.202-2, the contracting officer is obligated

> to the extent practicable, encourage maximum participation by small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns in acquisitions by taking the following actions:
>
> (a) Before issuing solicitations, make every reasonable effort to find additional small business concerns, unless lists are already excessively long and only some of the concerns on the list will be solicited. This effort should include contacting the SBA procurement center representative (or, if a procurement center representative is not assigned, see 19.402(a)).

---

7/ Nevertheless, this case is distinguishable from Axiom. First, the court is not relying on the proffered affidavit as support for this decision. Second, the court is not faced with plaintiff's attempt to supplement the record with numerous documents that alter the existing agency record. Plaintiff is merely providing evidentiary support, through one affidavit, for the reasonable inferences drawn and arguments made from existing record facts. A discrete difference exists between adding evidence to the record to aid in the reexamination of the contracting officer's decision and submitting an evidentiary filing that points out to the court whether the contracting officer did or did not do something. The supplementation here is the latter. If he can substantiate that the contracting officer's review was insufficient or deficient, Mr. Totolo would be supplying the required factual predicate for a finding that the contracting officer acted arbitrarily or capriciously.

In furtherance of the goal in finding small business concerns, FAR 873.106(a) provides, in pertinent part, that, "[i]n conducting market research, exchange of information by all interested parties involved in an acquisition, from the earliest identification of a requirement through release of the solicitation, is encouraged." FAR 873.106(b) provides techniques to be used in promoting "early exchange of information," such as industry or small business conferences; public hearings; market research; presolicitation notices; and use of vendor databases, including www.vetbiz.gov.

Defendant argues that the standard of reasonableness would not require the DVA to disclose the bonding estimate for several reasons. "Admittedly, contracting officers of the DVA in market surveys have not acted precisely the same way regarding the inclusion of statements in Sources Sought Notices regarding bonding capacity for projects." Def.'s Br. filed Apr. 24, 2009, at 10. Defendant states that, as evidenced by statute, Congress has provided preferences for small businesses and specifically for veteran-owned small businesses: 38 U.S.C. § 8127 (discussing contracting goals and preferences for small business concerns owned and controlled by veterans); FAR 19.202-2 (locating small business sources); and FAR 873.106 (presolicitation exchanges with industry).

Defendant characterizes plaintiff's proffer of the eleven other SSNs as evidence of the DVA's arbitrary presolicitation methods as a matter beyond the "scope of review and completely irrelevant." Def.'s Br. filed Apr. 24, 2009, at 9. This argument is completely unconvincing because the Court of Federal Claims has been authorized to review agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

The court agrees with defendant, however, that disclosure of a bond estimate in the SSN would conflict with the Government's right and legal obligation to keep a project estimate confidential. FAR 36.203(c) limits information regarding the Government's estimate of construction costs to "personnel whose official duties require knowledge of the estimate," unless an exception allowing disclosure is permitted by agency regulations.

Moreover, as defendant points out, plaintiff's failure to establish the predicate fact – that a prescribed practice or a solicitation method exists – undercuts its challenge to the reasonableness of excluding a bond estimate in the SSN. Plaintiff cannot show that the DVA arbitrarily deviated from a practice without first substantiating that a certain practice has been adopted. FAR 5.207(a), (c) do not support plaintiff's effort in establishing a prescribed practice, as these provisions list numerous items that must (FAR 5.207(a)) or should be included in proposed contact actions to assist "a prospective offeror [in] mak[ing] an informed business judgment as to whether a copy of the solicitation should be requested . . . ," FAR 5.207(c). None of the elements enumerated in FAR 5.207 includes

disclosure of a bond estimate. While defendant concedes that Mr. Clemons's actions were inconsistent with the actions of other contracting officers, an inconsistency alone does not establish lack of a rational basis. The contracting officer is afforded discretion in making the "decision not to state the bonding capacity required," thereby maintaining "the Government's estimate" for the Project confidential. Def.'s Br. filed Apr. 24, 2009, at 11; see also FAR 36.203. The court accepts defendant's reconciliation of these putatively inconsistent obligations.

Plaintiff next contends that the DVA imposed a higher standard than what is mandated under FAR 19.502-2(b) by requiring the contracting officer to obtain "a non-binding written expression of interest from two or more small businesses in order to set-aside an acquisition . . . ." Pl.'s Br. filed Apr. 16, 2009, at 4. Plaintiff relegates its own search of the VetBiz registry, which purportedly identified more than 40 SDVOSB "contractors with suitable bonding capacity," as evidence that Mr. Clemons did not apply the "reasonable expectation" standard in making his determination to conduct the procurement as a full and open competition/unrestricted. Pl.'s Br. filed May 1, 2009, at 9.

Instead of responding directly to plaintiff's argument, defendant compares the minimal burden on a contractor in responding to the SSN with the substantial burden of preparing a bid and obtaining a bond. Defendant reasons that it is "entirely reasonable for the contracting officer to conclude that it was unlikely that two or more small businesses" would bid on the Project. Def.'s Br. filed Apr. 24, 2009, at 12-13. Mr. Clemons's "brief search of the VetBiz web site" did not reveal small businesses with the requisite bonding capacity and experience. Id. at 12. In light of the limited responses to the SSN, defendant views this search as confirming the reasonableness of Mr. Clemons's prior conclusions. The court finds that this *ad hoc* superficial search is insufficient to render the contracting officer's other actions to identify suitable businesses unreasonable.

Pivoting from the argument that the DVA imposed unreasonably high standards on responses to the market research, plaintiff charges that the DVA performed insufficient research in three areas: through the SSN, the contracting officer's review of the VetBiz database, and the Small Business Specialist's review of the contracting officer's recommendation. 8/

---

8/ Plaintiff proffers that the cursory review and rapid approval by the OSDBU of Mr. Clemons's recommendation to conduct the Solicitation "as full and open/unrestricted," AR at 6, is evidence of the superficial inquiry made before issuing the DVA's decision. Plaintiff also characterizes as suspect the post-remand and revised Form 2268 to reflect a total contract value of $30 million, compared with the original $50 million estimate. Pl.'s Br. filed

Plaintiff discounts Mr. Clemons's research of the VetBiz Registry, stating that "no objective contemporaneous records of this search, no results sheets, no physical evidence that the alleged search ever took place, no parameters of the search, or any other evidence" substantiate the search for qualified small businesses. Pl.'s Br. filed Apr. 16, 2009, at 5; Pl.'s Br. filed May 1, 2009, at 9. Plaintiff asserts that the criteria used to search the database "[do] not make sense." Pl.'s Br. filed May 1, 2009, at 9. If Mr. Clemons searched the database by the NAICS code (Service Disabled Veteran) and by bonding capacity, he would have narrowed the results, thus providing a more "reasonable number of contractors" to review. Id.

Plaintiff extrapolates that Mr. Clemons did not satisfy the DVA's burden under applicable regulations. FAR Part 19 states, in relevant part that "[i]t is the policy of the Government to provide maximum practicable opportunities in its acquisitions to small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns." FAR 19.201. Thus, the contracting officer "must, to the extent practicable, encourage maximum participation," FAR 19.202-2, of small businesses and, before issuing solicitations, "make every reasonable effort" to locate small businesses sources, FAR 19.202-2(a).

According to defendant, a more extensive search of VetBiz resulting in a longer list of qualified businesses does not equate to more businesses interested in the Solicitation; indeed, responses to the SSN are the "best evidence" of interest. Def.'s Br. filed Apr. 24, 2009, at 15; see FAR 19.202-2(a) (stating that "[b]efore issuing solicitations, make every reasonable effort to find additional small business concerns, unless lists are already excessively long and only some of the concerns on the list will be solicited").

   4. Overview of the DVA's actions

As plaintiff observes, FAR 19.501(e) does require the contracting officer to "document why a small business set-aside is inappropriate when an acquisition is not set aside for small business . . . ." See Pl.'s Br. filed May 14, 2009, at 3. However, neither this regulation nor any other cited by plaintiff imposes the burden that plaintiff would place on

---

8/ (Cont'd from page 17.)

Apr. 16, 2009, at 6 (citing AR at 8, Pl.'s Br. filed Mar. 10, 2009, Ex. A). The court has examined these arguments and finds that they unsuccessfully attempt to elevate inconsequential matters to procurement flaws.

the DVA to document and search for SDVOSBs interested in contracting opportunities through the DVA. Defendant's latest submission revising the Solicitation to reflect the authority for the procurement under FAR subpart 19.10 wrests this procurement out of the ambit of restricted competition. Yet, as both parties concur, 38 U.S.C. § 8127 remains applicable; therefore, plaintiff's primary argument that the DVA did not perform proper due diligence in alerting and searching for SDVOSBs is not rendered moot. Plaintiff's assertions that the contracting officer could have better performed his duties under FAR 19.202-2 still do not rise to the level of a prejudicial violation of an applicable procurement regulation. Moreover, plaintiff has failed to prove that the DVA made an unreasonable decision in issuing the Solicitation as an unrestricted competition. The manner in which the DVA assesses its needs is a business judgment and lies within its own discretionary domain. See JT Constr. Co., No. B-254257, WL 505803 at *2 (Comp. Gen. Dec. 6, 1993) (stating that it is business judgment within contracting officer's discretion when deciding not to set aside competition for small businesses); see also Domenico Garufi, 238 F.3d at 1334-35 (noting that "wide discretion" is afforded to contracting officers "in making responsibility determinations and in determining the amount of information that is required to make a responsibility determination").

V. Other factors required for injunctive relief

Plaintiff has shown irreparable harm. An action at law only allows recovery of bid preparation costs in a suit for damages, but not loss of anticipated profits, leaving a bid protestor irreparably harmed. Essex Electro Eng'rs, Inc. v. United States, 3 Cl. Ct. 277, 287 (1983), aff'd, 757 F.2d 247 (Fed. Cir. 1985)). Nevertheless, the financial harm to plaintiff cannot overcome its failure to prove its case on the merits.

The public interest in providing fair opportunities for qualified small businesses to bid on government contracts would not be served by enjoining the DVA's procurement process under the Solicitation, given that plaintiff has not established that the market research conducted by the DVA was unreasonable, or that the Sources Sought Notice was arbitrary, capricious, or otherwise unreasonable.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for judgment on the administrative record is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

No costs.

s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge